EXHIBIT "B"

# NON-COMPETE AGREEMENT

THIS NON-COMPETE AGREEMENT (this "Agreement"), is made as of the 7th day of August, 2006, by and between **TEKNOR APEX COMPANY,** a Delaware corporation, ("Seller") and **PASSPORT CARPETS, INC.,** a Georgia corporation ("Company").

## WITNESSETH:

**WHEREAS**, Seller and Company are parties to that certain Asset Purchase Agreement dated August 3, 2006 (the "Asset Purchase Agreement"), pursuant to which Seller has agreed to sell to Company certain of its assets (the "Acquisition"); and

**WHEREAS**, the Company will hereafter engage in the business of manufacturing, marketing and distributing matting for industrial and commercial applications with the assets acquired by it from Seller in substantially the same manner as such business was conducted by Seller prior to the Acquisition; and

**WHEREAS**, Company has requested that, as a condition to the closing of the Acquisition, Seller execute this Agreement; and

**WHEREAS**, Seller acknowledges that the Acquisition will insure to its best interests and, therefore, to induce the Company to consummate the Acquisition Seller is willing to execute this Agreement;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1. Definitions. As used in this Agreement the following terms shall have the following meanings:

(a) The "Business" shall mean the business of marketing and distributing mats and matting for the industrial and Jan San dealer and distribution network as identified in the customer list provided. (the "Business") as such activities have been conducted by Seller prior to the date of the closing of the Acquisition and as such activities are to be to be conducted by the Company with the assets purchased by it from and after the date of this Agreement.

(b) "Competing Business" shall mean any Person, including Seller, that engages in a business substantially similar to the business of marketing and distributing mats and matting for the industrial and Jan San dealer and distribution network as identified in the customer list provided.

(c) "Territory" shall mean that geographical area lying and being within the contiguous states of the Unites States of America.

(d) "Person" shall mean an individual, a partnership, an association, a corporation, a trust, an unincorporated organization, a limited liability company or any other business entity or enterprise; provided, however, the term APerson@ shall not include the Company.

(e) Any capitalized terms used herein which are not defined herein shall have the meanings assigned to them in the Asset Purchase Agreement.

2. Acknowledgments by Seller. Seller acknowledges and agrees that:

(a) The nature and periods of restrictions imposed by the covenants contained in this Agreement are fair, reasonable and necessary to protect and preserve for the Company the benefits of the Asset Purchase Agreement;

(b) The Company would sustain great and irreparable loss and damage if Seller was to breach any of such covenants;

(c) The Company intends to conduct the Business actively in the entire Territory with assets acquired by the Company from Seller pursuant to the Asset Purchase Agreement; and

(d) The covenants herein set forth are made as an inducement to and have been relied upon by the Company in consummating the Asset Purchase Agreement.

3. Covenants of Seller. Having acknowledged the foregoing, Seller covenants and agrees that it will not, directly or indirectly, during the period commencing on the date hereof and ending September 15, 2009 (the "Term"):

(a) Engage, directly or indirectly, in any Competing Business within the Territory, or own, manage, operate, join, control, assist, participate in or be connected with, directly or indirectly (and including, without limitation, as a shareholder, partner, member, proprietor, consultant, independent contractor or lender) any Competing Business within the Territory. (For the purposes of this Agreement the direct or indirect engagement in any Competing Business within the Territory by a subsidiary or affiliate of Seller shall be deemed a direct or indirect engagement in a Competing Business within the Territory by Seller); or

(b) Solicit, divert or appropriate to itself as a Competing Business or to any other Competing Business, or attempt to solicit, divert or appropriate to itself as a Competing Business or to any other Competing Business, the business of any Person that was a Business customer of Seller at any time during the twelve-month period immediately preceding the date of the closing of the Acquisition. (For the purposes of this Agreement such solicitation, diversion or appropriation as described in this subsection (b) by a subsidiary or affiliate of Seller shall be deemed a solicitation, diversion or appropriation by Seller); or

(c) Solicit, divert or appropriate to itself or to any Competing Business, or attempt to solicit, divert or appropriate to itself as a Competing Business or to any Competing Business, any Person who was a Business employee of Seller during the twelve-month period immediately preceding the date of closing of the Acquisition. (For the purposes of this Agreement such solicitation, diversion or appropriation as described in this subsection (c) by a subsidiary of Seller shall be deemed a solicitation, diversion or appropriation by Seller).

4. Consent to Injunction. Seller acknowledges that its breach of any covenant contained in this Agreement will result in irreparable injury to Company and that Company's remedy at law for such a breach will be inadequate and will be extremely difficult to calculate or determine. Accordingly, Seller agrees and consents that upon any such breach Company shall, in addition to all other remedies available to Company at law and in equity, be entitled to both preliminary and permanent injunctions to be issued by a court of competent jurisdiction to prevent or halt any such breach or threatened breach.

5. Severability. In the event that any provision of this Agreement or any word, phrase, clause, sentence or other portion hereof (including, without limitation, the geographical and temporal restrictions contained herein) should be held to be unenforceable or invalid for any reason, such provision

or portion thereof shall be modified or deleted in such a manner so as to make this Agreement, as modified, legal and enforceable to the fullest extent permitted under applicable law. Without limiting the generality of the foregoing, in the event such unenforceability or invalidity relates to any single party hereto, such unenforceability or invalidity shall not impair, terminate or otherwise modify any of the obligations of any of the other parties hereto.

6. Miscellaneous.

(a) This Agreement contains the entire understanding of the parties hereto with respect to the subject matter hereof and may not be modified except for by written instrument signed by all parties hereto, and there are no agreements, understandings, restrictions, warranties or representations relating to said subject matter among the parties other than those set forth herein or herein provided.

(b) This Agreement may not be modified except for by written instrument signed by all parties hereto.

(c) This Agreement may not be assigned by either party hereto without the prior written consent of all parties; provided, however, this Agreement and the rights and obligations of the Company hereunder may be assigned by the Company to any Person purchasing substantially all of the assets of the Company.

(d) Seller acknowledges that the acquisition of the assets of Seller by the Company pursuant to the Asset Purchase Agreement provides good and valuable consideration received by Seller for the covenants and undertakings as described in this Agreement, and that such covenants and undertakings are ancillary to the sale of the assets of Seller to the Company.

(e) This Agreement shall be governed by the laws of Georgia. The parties hereto agree to the exclusive jurisdiction of the Superior Court of Gordon County, Georgia, with respect to any claim or cause of action arising under or related to this Agreement, and each party waives any objection based on personal jurisdiction or forum non conveniens and waives any objection to venue of any action instituted hereunder.

(f) This Agreement may be executed in two or more counterparts, each of which will take effect as an original and all of which shall evidence one and the same Agreement.

(g) All pronouns used herein shall be deemed to refer to the masculine, feminine or neuter gender, as the context requires.

(h) The notice provisions of the Asset Purchase Agreement are incorporated herein by reference thereto.

(i) No delay or failure by either party to exercise any right under this Agreement, and no partial or single exercise of that right, shall constitute a waiver of that or any other right.

(j) Titles or captions of sections contained in this Agreement are inserted only as a matter of convenience and for reference and in no way define, limit, extend or prescribe the scope of this Agreement or the intent of any provision.

(k) Neither this Agreement nor any uncertainty or ambiguity herein shall be construed or resolved against any particular party, whether under any rule or construction or

otherwise. No party to this Agreement shall be considered the draftsman. On the contrary, this Agreement has been reviewed, negotiated, and accepted by all parties and their attorneys and shall be construed and interpreted according to the ordinary meaning of the words used so as to accomplish fairly the purposes and intentions of all parties hereto.

**IN WITNESS WHEREOF**, the parties hereto have executed and sealed this Non-Compete Agreement as of the day and year first above written.

**SELLER:**

**TEKNOR APEX COMPANY**

BY: Jonathan D. Fain
President

**COMPANY:**

**PASSPORT CARPETS, INC.**

BY: Jeffrey S. Chilton
President