***UNITED STATES DISTRICT COURT***
***DISTRICT OF RHODE ISLAND***

| | | |
|---|---|---|
| TEKNOR APEX COMPANY | : | |
| | : | |
| -V- | : | |
| | : | |
| PASSPORT CARPETS INC. | : | Civil Action No. 07-194-T |
| | : | |
| -V- | : | |
| | : | |
| PETER LARKIN, et al. | : | |

## ***THIRD-PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT***

The third-party defendant, Peter Larkin ("Larkin"), hereby moves this Court for an order entering summary judgment in his favor and against the defendant, Passport Carpets, Inc. ("Passport") on all matters raised in the Third-Party Complaint.

In support of this motion, Larkin relies on the accompanying memorandum of law, as well as his affidavit and the affidavit of Vince DePhillips, all of which are submitted contemporaneously herewith.

WHEREFORE, Larkin respectfully requests that his motion be granted, and that the Court enter judgment in his favor and against Passport on all issues raised in the Third-Party Complaint.

PETER LARKIN
By his attorneys,

/s/ Douglas J. Emanuel

Douglas J. Emanuel, Esq. (#5176)
Chace Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, RI 02903
Phone: (401) 453-6400
Fax: (401) 453-6411
Email: demanuel@crfllp.com

Dated: August 30, 2007

***CERTIFICATE OF SERVICE***

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 30, 2007.

/s/ Douglas J. Emanuel

***UNITED STATES DISTRICT COURT***
***DISTRICT OF RHODE ISLAND***

| | | |
|---|---|---|
| TEKNOR APEX COMPANY | : | |
| -V- | : | |
| PASSPORT CARPETS INC. | : | Civil Action No. 07-194-T |
| -V- | : | |
| PETER LARKIN, et al. | : | |

***MEMORANDUM IN SUPPORT OF***
***THIRD-PARTY DEFENDANT'S***
***MOTION FOR SUMMARY JUDGMENT***

The third-party defendant, Peter Larkin ("Larkin"), has moved this Court for an order entering summary judgment in his favor and against the defendant, Passport Carpets, Inc. ("Passport"), on each of the three counts contained in the Third-Party Complaint. Larkin submits this memorandum in support of its motion.

## *I. Background*

Teknor Apex Company ("Teknor") is a manufacturer headquartered in Pawtucket, Rhode Island. One of the products it manufactured was rubber matting for business purposes. It primarily sold this matting to two separate industries: janitorial and sanitation ("Jan/San") on the one hand, and food service ("Food Service") on the other.

In August, 2006, Passport purchased Teknor's Jan/San business. Teknor agreed to finance Passport's purchase of the Jan/San business, while simultaneously agreeing to purchase from Passport its future requirements for a finite term.[1]

[1] Teknor's closing a manufacturing plant spurred the sale of the Jan/San and Food Service businesses. Teknor still had need for the products Passport was to produce following the sale of its Jan/San business to Passport, but had made the decision to not manufacture the product itself.

Teknor sold its Food Service business, the second and final segment of its rubber matting business, to Superior Manufacturing, Inc. ("Superior") in January, 2007. With this sale, Teknor no longer had a need for Larkin's services, and Larkin became employed by Superior.

When Passport subsequently defaulted on hundreds of thousands of dollars in payment it owed to Teknor, Teknor filed suit.

In addition to defending the breach of contract action brought by Teknor, Passport has unnecessarily and meritlessly brought Larkin into the litigation, alleging that he has committed several business torts in connection with his employment by Superior. However, these claims have no merit, as Larkin has never shared any knowledge of the Jan/San Business purchased by Passport with anyone at Superior.

Thus, summary judgment is appropriate.

## *II. Argument*

Summary judgment is appropriate where the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The non-moving party may not rest merely upon the allegations or denials in its pleading. Instead, the non-moving party must set forth specific facts showing that a genuine issue 'of material fact exists as to each issue upon which she would bear the ultimate burden of proof at trial. The evidence presented by the non-moving party may not be conclusory allegations, improbable inferences, [or] unsupported speculation. *Torres-Negron v. Merck & Co., Inc.***,** 488 F.3d 34, 39 (1st Cir. 2007) (all internal citations omitted). Rather, it must be information that is admissible in evidence, and demonstrated to be provided by an affiant competent to testify to the matters set forth therein. Fed. R. Civ. P. 56(e).

Summary judgment is wholly appropriate for entry on the claims raised by the Third-Party Complaint.

### *A. There are no disputed material facts.*

There are very few material facts.[2] The few that are material are indisputable.[3]

Larkin worked for Teknor. *Affidavit of Peter Larkin dated August 30, 2007 ("Larkin Aff."),* ¶ 3.

Teknor had two segments of the rubber matting business market. One was in janitorial and sanitation uses ("Jan/San"). The other was in food service uses ("Food Service"). *Larkin Aff.,* ¶ 4.

In August, 2006, Passport purchased the Jan/San segment. *Larkin Aff.,* ¶ 5; *Counterclaim,* ¶ 3.

Superior Manufacturing, Inc. ("Superior") purchased Teknor's Food Service segment in or around January, 2007. *Affidavit of Vince DePhillips dated August 30, 2007 ("DePhillips Aff."),* ¶¶ 4.

While the sale of the Food Service market segment to Superior was pending, Larkin knew that when it was complete, there would be no employment opportunity for Larkin remaining at Teknor. *Larkin Aff.,* ¶ 7.

Thus, during the pendency of the sale, Larkin sought employment with Superior so that Larkin could continue in the Food Service end of the rubber matting industry. *Larkin Aff.,* ¶ 8.

Long before Larkin's employment with Superior, Superior had established its own participation in the Jan/San market, and, in fact, enjoyed a dominant position in that field. *Larkin Aff.,* ¶ 9; *DePhillips Aff.,* ¶ 5.

Larkin's employment with Superior has been dedicated exclusively to the Food Service segment of Teknor's former rubber matting business. *Larkin Aff.,* ¶ 10; *DePhillips Aff.,* ¶¶ 6, 8.

---

[2] Larkin does not, for the time being, make any argument as to lack of causation or lack of damages as grounds for its Motion for Summary Judgment. Larkin specifically reserves the right to do so to any extent necessary in the future. However, as Larkin has not committed any of the torts alleged, *Larkin Aff.,* ¶¶ 11-14-15, he is highly skeptical of Passport's to prove causation or damages.

[3] Pursuant to applicable Local Rules, these undisputed facts are set forth in Larkin's Statement of Undisputed Facts.

To the extent that Larkin retained knowledge of any of Teknor's customer lists, costs and sales strategy, and identity and location of sales representative groups (other than what is publicly available or known in the industry), Larkin has not shared, nor had occasion to share, any of that information with anyone at Superior. *Larkin Aff.,* ¶ 11.

To the extent that Larkin still retains knowledge of any of Teknor's customer lists, costs and sales strategy, and identity and location of sales representative groups (other than what is publicly available or known in the industry), Larkin has no intention to share, nor intends to have any occasion to share, any of that information with anyone at Superior. *Larkin Aff.,* ¶ 12.

Larkin has not participated in any business discussions of the Jan/San segment of the matting business since his employment by Superior, and has no knowledge of what companies, if any, are currently are doing business with Passport in the Jan/San segment of the industry. *Larkin Aff.,* ¶ 13.

Larkin has not participated in any business discussions of the Jan/San segment of the matting business since his employment by Superior, and has no knowledge of what companies, if any, may be doing business with Passport in the Jan/San segment of the industry in the future. *Larkin Aff.,* ¶ 14.

### *B. Larkin is entitled to judgment as a matter of law.*

Passport's Third-Party Complaint alleges three specific claims against Larkin.[4] Count I alleges that Larkin has "tortiously interfered with the contractual relationship between Passport and Teknor." *Third-Party Complaint,* ¶ 7. Count II alleges that Larkin "misappropriated certain trade secrets purchased by Passport from Teknor, including but not limited to customer lists, costs and

[4] The Third-Party Complaint purports to be asserted against four "John Does." They have neither been identified nor served. Although counsel for Larkin does not currently represent these "John Does," should they be identified and served, it would seem that much, if not all, of these arguments would apply.

sales strategy, and identity and location of sales representative groups." *Third-Party Complaint,* ¶ 10. Count III alleges that Larkin has "interfered with the prospective business advantage of Passport." *Third-Party Complaint,* ¶ 13.

***1. Larkin is entitled to judgment as a matter of law on Count I.***

The elements of a successful claim for intentional interference with contractual relationships are straightforward: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) alleged wrongdoer's intentional interference with contract; and (4) damages resulting therefrom. *APG, Inc. v. MCI Telecommunications Corp.,* 436 F.3d 294, 303 (1st Cir. 2006); *Mills v. C.H.I.L.D., Inc.,* 837 A.2d 714, 721 (R.I. 2003).

Passport's claim for intentional interference with contractual relationships against Larkin fails in that Larkin never intentionally interfered with the contract between Passport and Teknor. *Larkin Aff.,* ¶¶ 12-13 (Larkin has not shared, has not had reason to share, nor intends to share anything about Teknor's Jan/San business with Superior); *DePhillips Aff.,* ¶¶ 9-11 (Larkin has not shared, nor has been asked to share, nor is intended to be asked to share such information, and Superior does not care whether he possesses the information or not).

As Passport is without admissible evidence (other than rank speculation) to cast doubt on what is categorically true, its claim for intentional interference with contractual relationships is unable to survive a motion for summary judgment as to Count I.

***2. Larkin is entitled to judgment as a matter of law on Count II.***

Count II, like Count I, alleges, without support, that Larkin has misappropriated trade secrets purchased by Passport from Teknor for the benefit of Superior, or, merely to the detriment of Passport.

Passport's claim for misappropriation of trade secrets fails for the same reason as its claim

for intentional interference with contractual relationships – Larkin never shared anything about the customer lists, costs and sales strategy, and identity and location of sales representative groups Passport purchased from Teknor (other than what is publicly available or known in the industry) with anyone at Superior. *Larkin Aff.,* ¶¶ 12-13; *DePhillips Aff.,* ¶¶ 9-11.

But this claim fails for statutory reasons as well. In the trade secret context, R.I. GEN. LAWS § 6-41-1(s) defines "misappropriation" as:

> (i) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (ii) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>> (A) Used improper means to acquire knowledge of the trade secret; or
>> (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
>>> (I) Derived from or through a person who had utilized improper means to acquire it;
>>> (II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>> (III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>>
>> (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

R.I. GEN. LAWS § 6-41-1(2). Therefore, even before getting into subparts (A) through (C) or (I) through (III), there must either be an improper acquisition of a trade secret or a disclosure in order to qualify as a misappropriation. R.I. GEN. LAWS § 6-41-1(2)(i)-(ii).

The affidavits submitted herewith conclusively prove that there was no disclosure, and thus Larkin has not violated § 6-41-1(2)(ii). *Larkin Aff.,* ¶¶ 12-13; *DePhillips Aff.,* ¶¶ 9-11. Thus, unless Passport can prove that Larkin violated § 6-41-1(2)(i), there has been no statutory misappropriation.

Passport's claim must fail, however, because Larkin's conduct even as alleged does not qualify under (2)(i), and its definition of "improper means[5]." To the extent Larkin acquired "trade secrets" subsequently belonging to Passport as a result of its purchase from Teknor, he lawfully and properly acquired them as an employee of Teknor. *Larkin Aff.*, ¶¶ 3, 12-14.

Without wrongful acquisition of any purported "trade secrets," and certainly without any disclosure of *any* information relating to the Jan/San business Passport purchased from Teknor, there has been no misappropriation of trade secrets, and Larkin is entitled to judgment as a matter of law as to Count II.

***3. Larkin is entitled to judgment as a matter of law on Count III.***

Count III alleges that Larkin has "interfered with the prospective business advantage of Passport." *Third-Party Complaint,* ¶ 13.

"The same elements [as tortious interference with contractual relations] are required to state a claim based on tortious interference with a prospective contractual relationship, with the exception that the defendant's knowledge must relate to a business relationship or expectancy, rather than to an actual contract." *APG, Inc. v. MCI Telecommunications Corp.,* 436 F.3d 294, 303 (1st Cir. 2006) (citing *Mesolella v. City of Providence,* 508 A.2d 661-669-70 (R.I. 1986).

Larkin has not discussed Passport or the Jan/San segment of the matting business with any entity, person or company that is doing business with Passport. *Larkin Aff.,* ¶ 14. Likewise, Larkin has no knowledge of what companies, if any, may be doing business in the future with Passport in the Jan/San segment of the industry. *Larkin Aff.,* ¶ 15.

---

[5] "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. R.I. GEN. LAWS § 6-41-1(1).

Because he has not discussed Passport or its business with any segment of the Jan/San industry, he cannot be found to have interfered with Passport's prospective business advantages. This count, like Passport's two other counts, is without merit.

## *III. Conclusion*

It should be apparent that Larkin has, without justification, been brought into litigation that properly rests between Passport and Teknor. If Passport's business has suffered, it is not the result of Larkin or his conduct, as Larkin has not committed any of the torts alleged.

Because there can be no dispute as to the material facts, and because Larkin is entitled to judgment as a matter of law, Larkin respectfully requests that this Court grant his motion for summary judgment.

PETER LARKIN
By his attorneys,

/s/ Douglas J. Emanuel

Douglas J. Emanuel, Esq. (#5176)
Chace Ruttenberg & Freedman, LLP
One Park Row, Suite 300
Providence, RI 02903
Phone: (401) 453-6400
Fax: (401) 453-6411
Email: demanuel@crfllp.com

Dated: August 30, 2007

## *CERTIFICATE OF SERVICE*

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 30, 2007.

/s/ Douglas J. Emanuel