**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| TEKNOR APEX COMPANY | : | |
| V. | : | |
| PASSPORT CARPETS, INC. | : | C.A. No. 07-194-T |
| V. | : | |
| PETER LARKIN, ET AL | : | |

**PRETRIAL CONFRENCE STATEMENT**
**FOR DEFENDANT, PASSPORT CARPETS, INC.**

Defendant, PASSPORT CARPETS, INC. ("PASSPORT") hereby submits the following as its Pretrial Conference Statement, pursuant to this Court's Notice dated October 1, 2007.

## I. FACTS

As alleged in Defendant's Answer, PASSPORT asserts that it was fraudulently induced to execute the Asset Purchase Agreement and Promissory Note because the principals of TEKNOR APEX COMPANY ("TEKNOR") misrepresented to PASSPORT material facts, including the following: financial performance of the line, expected inventory returns, landed cost values applied at time of transfer, value of certain discontinued styles, and finally, that purchased assets were adequate to support the business being purchased by the Defendant. In fact, the inventory value was grossly inflated, and the purchased assets were not sufficient to support the business being purchased, and PASSPORT was only able to make its first inventory payment of One Hundred Twenty-Two Thousand and 00/100 ($122,000.00) Dollars to TEKNOR. (See Paragraph 7 of Defendant's Answer.) Also, as part of its Answer, PASSPORT

alleges that the principals of TEKNOR misrepresented to PASSPORT (a) that they would supply PASSPORT its requirement for vinyl-backed matt and matting products for a two (2) year period until September 15, 2008; (b) that TEKNOR, for a two (2) year period, would exclusively purchase from PASSPORT its requirements for products; (c) that they would not solicit, divert or appropriate to any competing business, any business employee of PASSPORT during the twelve (12) month period preceding the date of closing. In fact, TEKNOR, approximately three (3) months after the closing with PASSPORT, stopped all sales of its products to PASSPORT, further failed to purchase any product from PASSPORT, and finally upon information and belief, diverted key personnel of TEKNOR to Superior Manufacturing, a major competitor of PASSPORT. (See Paragraph 7 of Defendant's Answer.)

Finally, as part of Defendant's Third-Party Complaint against (former employee of TEKNOR) PETER LARKIN, PASSPORT alleges interference with contractual relations, interference with prospective business advantage and misappropriation of certain trade secrets purchased by PASSPORT from TEKNOR, including customer lists, costs and sales strategy, and identity and location of sales representative groups. (See Paragraph 4-14 of Defendant's Third-Party Complaint.)

## II. ELEMENTS OF CLAIM TO BE PROVEN OF DEFENDANT'S COUNTERCLAIM

### A. COUNT I SEEKS DECLARATORY JUDGMENT AS TO THE ENFORCEABILITY OF THE ASSET PURCHASE AGREEMENT AND PROMISSORY NOTE.

The Court is empowered to grant declaratory relief by the Declaratory Judgment Act, 28 U.S.C. § 2201, which provides in pertinent part in subsection (a): "In a case of actual controversy within its jurisdiction . . . any Court of the United States, upon the filing of an

appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration . . ." Declaratory relief under 28 U.S.C. § 2201 (a) is discretionary. United States Liab. Ins. Co. v. Selamn, 70 F.3d 684, 693-94 (1st Cir. 1995). Since the Declaratory Judgment Act is procedural in nature, federal law controls the question of whether a District Court may grant declaratory relief in a given case. Britamco Underwriters, Inc. v. C.J.H., Inc., 845 F.Supp. 1090, 1092 (E.D.Pa., 1994), affd., 37 F.3d 1485 (3d Cir. 1994); Louisiana Nevada Transit Co. v. Marathon Oil Co., 770 F.Supp. 325, 327 (W.D.La. 1991), affd., 985 F.2d 797 (5th Cir. 1993).

The Declaratory Judgment Act applies only to "a case of actual controversy", thereby incorporating the Article III requirement that a Federal Court only entertain "cases or controversies". See Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 239-40, 81 L.Ed. 617, 57 S.Ct. 461 (1937); Indemnity Ins. Co. of N. Am. v. Kellas, 173 F.2d 120, 123 (1st Cir. 1949). It is hornbook law that a "controversy" in this sense must be one that is appropriate for judicial determination. A justifiable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character and from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a degree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Haworth, 300 U.S. at 240-41 (citations omitted); see also United States Nat'l Bank of Oregon V. Independent Ins. Agents of Am., Inc., 508 U.S. 439, 446, 124 L.Ed. 2d 402, 113 S.Ct. 2173 (1993) (Federal Courts lack the power to give advisory opinions).

**B. COUNT II SEEKS DAMAGES AGAINST TEKNOR FOR FRAUD.**

Fraud is a state law cause of action and state law governs the burden of proving fraud at trial. Guilbeault v. R.J. Reynolds Tobacco Co., 84 F.Supp.2d 263 (D.R.I. 2000). To establish fraud in Rhode Island, a plaintiff must show: (1) a false or misleading statement of material fact that was (2) known by the defendant to be false and (3) made to deceive, (4) upon which the plaintiff relied to his detriment. Id., citing, National Credit Union Admin. Bd. v. Regine, 795 F.Supp. 59, 70 (D.R.I. 1992) [citing B.S. Int'l Ltd. v. Licht, 696 F.Supp. 813, 827 (D.R.I. 1988)]; McGovern v. Crossley, 477 A.2d 101, 103 (R.I. 1984); Halpert v. Rosenthal, 107 R.I. 406, 267 A.2d 730, 733 (R.I. 1970).

**C. COUNT V SEEKS DAMAGES FOR BREACH OF AGREEMENT TO PURCHASE ASSEST FROM TEKNOR FOR A TWO (2) YEAR PERIOD.**

"A party establishes a breach of contract claim when that party demonstrates a 'violation of a contractual obligation, either by failing to perform one's promise or by interfering with another party's performance.'" Demicco v. Medical Associates of Rhode Island, Inc., et al, 2000 WL 1146532 at *2 (D.R.I. July 31, 2000) [citing Black's Law Dictionary 182 (7th ed. 1999)].

**D. COUNT VI SEEKS DAMAGES FOR BREACH OF NON-COMPETE AGREEMENT WITH TEKNOR.**

Although Paragraph 6 of the Non-Compete Agreement between the parties provides that it shall be governed by Georgia law, it appears that laws in both states are substantially similar and both follow the Restatement (Second) Contracts Rule. The party seeking to enforce a non-competition provision must show that (1) the provision is ancillary to an otherwise valid transaction or relationship, such as an employment contract or a contract for the purchase and sale of a business, Restatement (Second) Contracts § 187 (1981); (2) the

provision is supported by adequate consideration, Wood v. May, 73 Wash.2d 307, 310-11, 438 P.2d 587, 589-90 (1968), see also Central Adjustment Bureau, Inc. v. Ingram, 678 S.W.2d 28, 33 (Tenn. 1984); and (3) there exists a legitimate interest that the provision is designed to protect. Max Garelick, Inc., 105 R.I. at 149, 250 A.2d at 357. See generally Hudgins v. American Fabricated Products, Inc., 250 Ga.App. 283, 551 S.E.2d 393 (2001). However, in Georgia these contracts have been interpreted broadly to protect the purchaser's interest "that which may not be done directly may not be done indirectly". See Daubresse v. Smithey, 231 Ga. 725 (1974).

**E. COUNT I OF PASSPORT'S THIRD-PARTY COMPLAINT AGAINST PETER LARKIN SEEKS DAMAGES FOR TORTIOUS INTEFERENCE WITH CONTRACTUAL RELATIONS.**

The elements of a claim for intentional interference with contractual relationships are as follows: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) alleged wrongdoer's intentional interference with contract; and (4) damages resulting therefrom. APG, Inc. v. MCI Telecommunications Corp., 436 F.3d 294, 303 (1st Cir. 2006); Mills v. C.H.I.L.D., Inc., 837 A.2d 714, 721 (R.I. 2003).

**F. COUNT 11 OF PASSPORT'S THIRD-PARTY COMPLAINT SEEKS DAMAGES AND INJUNCTIVE RELIEF FOR MISAPPROPRIATION OF TRADE SECRETS.**

R.I.G.L. 6-41-1 defines misappropriation as:

> (i) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
> (ii) Disclosure or use of a trade secret of another without express or implied consent by a person who:
>> (A) Used improper means to acquire knowledge of the trade secret; or
>> (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:
>>> (I) Derived from or through a person who has utilized improper means to acquire it;
>>> (II) Acquired under circumstances giving rise

to a duty to maintain its secrecy or limit its use; or
(III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it has been acquired by accident or mistake. RIGL 6-41-1(2).

**G. COUNT III OF PASSPORT'S THIRD-PARTY COMPLAINT SEEKS DAMAGES FOR INTERFERENCE WITH THE PROSPECTIVE BUSINESS ADVANTAGE OF PASSPORT.**

"The same elements (as tortious interference with contractual relations) are required to state a claim based on tortious interference with a prospective contractual relationship, with the exception that the defendant's knowledge must relate to a business relationship or expectancy, rather than to an actual contract." APG, Inc. v. MCI Telecommunications Corp., 436 F.3d 294, 303 (1st Cir. 2006) [citing Mesolella v. City of Providence, 508 A.2d 661-669-70 (R.I. 1986).

Respectfully submitted,
PASSPORT CARPETS, INC.
By its attorneys,

/s/ Douglas H. Smith

DOUGLAS H. SMITH, ESQ. #2219
140 Reservoir Avenue
Providence, RI 02907
Phone: (401) 467-3590
Fax: (401) 467-5111
Email: lodhs5113@cox.net

## CERTIFICATION OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

and paper copies will be sent to those indicated as non-registered participants on October 22, 2007.

/s/ Douglas H. Smith

MW/KF/PASSPORT